Filing # 45709522 E-Filed 08/25/2016 05:20:27 PM

## IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
## IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
## CIVIL DIVISION

**BRIDGET DEAN, on behalf of herself
and on behalf of all others
similarly situated,**

                                                **CASE NO. :**
     **Plaintiff,**                   **CLASS REPRESENTATION**

v.

**SYNNEX CORPORATION,**

     **Defendant.**
_____/

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, BRIDGET DEAN ("Plaintiff"), by and through undersigned counsel, and on behalf of herself, the Putative Class set forth below, and in the public interest, brings this action against Defendant, SYNNEX CORPORATION ("Defendant"), under the Fair Credit Reporting Act of 1970, as amended ("FCRA"), 15 U.S.C. § 1681 et seq.

### PRELIMINARY STATEMENT

1.      Defendant SYNNEX CORPORATION is a Fortune 500 company that operates an information technology and supply chain service business.

2.      Defendant routinely obtains and uses information in consumer reports to conduct background checks on prospective and existing employees, frequently relying on such information, in whole or in part, as a basis for adverse employment action, such as termination, reduction of hours, change in position, failure to hire, and failure to promote.

3.      While the use of consumer report information for employment purposes is not per se unlawful, it is subject to strict disclosure and authorization requirements under the FCRA.

4.    Defendant willfully violated these requirements in systematic violation of Plaintiff's rights and the rights of other putative class members. Specifically, Defendant violated 15 U.S.C. § 1681b(b)(3)(A) by taking adverse employment action against Plaintiff and other putative class members based on undisclosed consumer report information without first providing Plaintiff and other affected class members with a copy of the pertinent consumer report, and without first providing them a reasonable opportunity to respond to the information in the report and discuss it with Defendant.

5.    Based on the foregoing violations, Plaintiff asserts FCRA claims against Defendant on behalf of herself and one separate putative Class, consisting of Defendant's employees and prospective employees.

6.    Plaintiff asserts a FCRA claim under 15 U.S.C. § 1681b(b)(3)(A) on behalf of an "Adverse Action Class" consisting of:

**All SYNNEX CORPORATION employees and job applicants in the United States against whom adverse employment action was taken, based, in whole or in part, on information contained in a consumer report obtained within five years of the filing of this complaint through the date of final judgment in this action, who were not provided the proper pre-adverse notice as required by the FCRA.**

On behalf of herself and the Putative Classes, Plaintiff seeks statutory damages, costs and attorneys' fees, equitable relief, and other appropriate relief under the FCRA.

## JURISDICTION AND VENUE

7.    This is a class action for damages in excess of $15,000, exclusive of interest, fees, and costs, for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.

8.    Venue is proper in Hillsborough County, because all of the events giving rise to these claims arose in this County.

2

## PARTIES

9.      Individual and representative Plaintiff BRIDGET DEAN currently lives in Hillsborough County, Florida. Plaintiff is a former prospective employee of Defendant, and is a member of the Putative Class defined above.

10.     Defendant is a foreign corporation with its principal place of business in California. Defendant is authorized and is doing business in the State of Florida. Specifically, Defendant hires employees who do work in Hillsborough County.

## ALLEGATIONS REGARDING DEFENDANT'S BUSINESS PRACTICES

11.     Defendant routinely obtains and uses information in consumer reports to conduct background checks on its prospective and current employees, and it frequently relies on such information, in whole or in part, as a basis for taking adverse employment action against employees or applicants, including but not limited to termination of employment, reduction of working hours, change in position, failure to hire, and failure to promote.

12.     While the use of consumer report information for employment purposes is not per se unlawful, it is subject to strict disclosure and authorization requirements under the FCRA.

13.     Defendant does not perform these background checks in-house. Rather, Defendant relies on one or more outside consumer reporting agencies to obtain this information and send the resulting reports back to Defendant.

14.     The reports obtained by Defendant for background check purposes are "consumer reports" within the meaning of the FCRA, 15 U.S.C. § 1681a(d).

15.     The FCRA provides that "in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates . . . a copy

3

of the report. . ." 15 U.S.C. § 1681b(b)(3)(A)(i).

16.     Defendant typically does not provide job applicants or employees with a copy of their consumer reports when it takes adverse action against them based on the information in such reports. By way of example, Plaintiff's offer of employment was rescinded due to inaccurate public record information about Plaintiff obtained by Defendant, and contained in Plaintiff's consumer report; however, Plaintiff never received any pre-adverse notice from Defendant before she was denied employment.

17.     This practice violates one of the most fundamental protections afforded to employees and job applicants under the FCRA, and also runs counter to longstanding regulatory guidance from the U.S. Federal Trade Commission ("FTC"): "[15 U.S.C. § 1681b(b)(3)(A)] requires that all employers who use consumer reports provide a copy of the report to the affected consumer before any adverse action is taken. Employers must comply with this provision even where the information contained in the report (such as a criminal record) would automatically disqualify the individual from employment or lead to an adverse employment action. Indeed, this is precisely the situation where it is important that the consumer be informed of the negative information...." Letter from William Haynes, Fed. Trade Comm'n, to A. Michael Rosen, Esq., Sr. VP Background America, Inc. (Jun. 9, 1998), 1998 WL 34323763 (F.T.C.) at *1, available at: https://www.ftc.gov/policy/advisory-opinions/advisory-opinion-rosen-06-09-98

18.     By failing to provide Plaintiff and other Putative Class members with copies of their consumer reports prior to taking adverse employment action against them based on such reports, Defendant willfully disregarded this longstanding regulatory guidance from the FTC and the plain language of the FCRA, in violation of 15 U.S.C. § 1681b(b)(3)(A).

19.    In doing so, Defendant violated 15 U.S.C. § 1681b(b)(3)(A) by taking adverse employment action against Plaintiff and other putative class members based on undisclosed consumer report information, without first providing her with a copy of the pertinent consumer report, and giving her a reasonable opportunity to respond to the information in the report and discuss it with Defendant.

20.    The FCRA also requires employers to provide notice to employees or job applicants at three different times: (1) before an employer requests and/or procures a consumer report for an employee or applicant, it must provide notice to the employee or applicant in a "stand-alone" document, and must also receive written authorization to do so from the employee or applicant (referred to as "Disclosure and Authorization"); (2) once an employer obtains a consumer report for an employee or applicant, and before an employer can take adverse action against this employee or applicant, it must first provide the employee or applicant with a copy of the report, and provide the employee or applicant with a description of the employee's or applicant's rights under the FCRA (referred to as "Pre-Adverse Action Notice"); and (3) once an employer takes adverse action, it must notify the employee or applicant that (i) it is taking adverse action based on the information contained in the employee's or applicant's consumer report, (ii) it is providing the employee or applicant with the name, address, and telephone number of the consumer reporting agency that furnished the consumer report, (iii) it is providing the employee or applicant with a statement that the consumer reporting agency did not make the decision to take the adverse action and is unable to provide the consumer with specific reasons as to why the adverse action was taken, (iv) it is providing the employee or applicant with notice of the employee's or applicant's rights as a consumer to obtain…a free copy of the consumer report for the employee or applicant from the consumer reporting agency…[within] the 60–day period,"

5

and (v) it is providing the employee or applicant with "notice of the consumer's right to dispute…with a consumer reporting agency the accuracy or completeness of any information contained in a consumer report furnished by the agency (referred to as "Post-Adverse Action Notice")." See 15 U.S.C. §§ 1681b and 1681m.

21.    Defendant failed to satisfy the FCRA's Pre-Adverse Action Notice requirement when it procured consumer reports for Plaintiff and the Putative Class, then rescinded Plaintiff's and the Putative Class' employment or offers of employment without pre-adverse action notice, solely based on information contained in their consumer reports.

### ALLEGATIONS SPECIFIC TO PLAINTIFF

22.    On or about January 15, 2016, Defendant offered Plaintiff the position of Field Account Executive, in which Plaintiff would work from her home in Riverview, Florida starting January 25, 2016.

23.    On or about January 15, 2016, Plaintiff accepted Defendant's offer of employment. In order to accept the position with Defendant, Plaintiff turned down employment opportunities with other companies.

24.    On or about January 15, 2016, Plaintiff submitted her personal information to Defendant in order for Defendant to obtain a consumer report.

25.    Between January 15, 2016 and January 20, 2016, Plaintiff regularly communicated with Defendant regarding details of her employment with Defendant to begin on January 25, 2016.

26.    On or about January 22, 2016, HireRight, the agency used by Defendant to conduct Plaintiff's consumer report, provided a consumer report to Defendant.

27.    Plaintiff's consumer report contained some issues due to unverified information.

6

28.     Before Plaintiff had an opportunity to fully review her consumer report and discuss any issues with Defendant, on or about January 22, 2016, Defendant called Plaintiff and withdrew the offer of employment due to information included in Plaintiff's consumer report.

29.     On or about January 26, 2016, and again on January 29, 2016, Defendant sent Plaintiff notice that due to information contained in her consumer report, Defendant may not employ Plaintiff. This notice came after Defendant already rescinded its offer of employment to Plaintiff.

30.     Defendant gave no pre-adverse action notice whatsoever to Plaintiff before rescinding its offer of employment.

31.     As a result, Plaintiff was deprived of the opportunity to review the information contained in her consumer report and to discuss it with Defendant **before** Defendant refused her employment. (Emphasis added).

32.     As a result of Defendant's reckless and willful violations of the FCRA, Plaintiff suffered actual damages.

## CLASS ACTION ALLEGATIONS

33.     Numerosity:   The Classes are so numerous that joinder of all members is impracticable. At this time, Plaintiffs do not know the exact size of the Class. Based on information and belief, the Class is comprised of at least thousands of members and is geographically dispersed throughout the country as to render joinder of all Class Members impracticable. The names and addresses of the Class members are identifiable through documents maintained by the Defendant, and the Class members may be notified of the pendency of this action by published and/or mailed notices.

34.     Typicality:   Plaintiff's claims are typical of the other Class Members' claims.

As described above, Defendant uses common practices and automated systems in committing the conduct that Plaintiffs allege damaged them and the Class. Plaintiffs seek only statutory and punitive damages for their class-wide claims and, in addition, Plaintiffs are entitled to relief under the same causes of action as the other members of the Classes. Defendant uniformly breached the FCRA by engaging in the conduct described above, and these violations had the same effect on each member of the Classes.

35.     Adequacy:     Plaintiff will fairly and adequately protect the interests of the Putative Classes, and has retained counsel experienced in complex class action litigation.

36.     Commonality: Common questions of law and fact exist as to all members of each Class. Without limitation, the total focus of the litigation will be Defendant's uniform conduct and procedures, whether Defendant provided the required notices, when it did so, and whether Defendant acted willfully in its failure to design and implement procedures to assure compliant delivery and/or timing of these notices. Even the appropriate amount of uniform statutory under 15 U.S.C. § 1681n is a common question for members of each of the Classes.

37.     This case is maintainable as a class action because prosecution of actions by or against individual members of the Putative Class would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendant. Further, adjudication of each individual Class member's claim as separate action would potentially be dispositive of the interest of other individuals not a party to such action, impeding their ability to protect their interests.

38.     This case is also maintainable as a class action because Defendant has acted or refused to act on grounds that apply generally to the Putative Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

39.    Class certification is also appropriate because questions of law and fact common to the Putative Class predominate over any questions affecting only individual members of the Putative Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendant's conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA. Members of the Putative Class do not have an interest in pursuing separate actions against Defendant, as the amount of each Class member's individual claims is small compared to the expense and burden of individual prosecution. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Putative Class members' claims in a single action brought in a single forum.

40.    Plaintiff intends to send notice to all members of the Putative Classes to the extent required. The names and addresses of the Putative Class members are available from Defendant's records.

### FIRST CLAIM FOR RELIEF
**Failure to Provide Copy of Consumer Report in Violation of FCRA**
**15 U.S.C. § 1681b(b)(3)(A)**

41.    Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

42.    Defendant used a "consumer report," as defined by the FCRA, to take adverse employment action against Plaintiff and other members of the Adverse Action Class.

43.    Defendant violated the FCRA by failing to provide Plaintiff and other

9

Adverse Action Class members with a copy of the consumer report that may have been used to take adverse employment action against them. *See* 15 U.S.C. § 1681b(b)(3)(A).

44.     The foregoing violations were willful. Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other Adverse Action Class members under 15 U.S.C. § 1681b(b)(3)(A). Defendant knew or should have known of its legal obligations under the FCRA. These obligations are well established in the plain language of the statute and in the promulgations of the Federal Trade Commission. Defendant obtained or otherwise had available substantial written materials that apprised Defendant of its duties under the FCRA. Any reasonable employer knows about or can easily discover these mandates.

45.     Plaintiff and the Adverse Action Class are entitled to statutory damages of not less than one hundred Dollars ($100) and not more than one thousand Dollars ($1,000) for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages under 15 U.S.C. § 1681n(a)(2).

46.     Alternatively, and at a minimum, Defendant's actions were negligent.

47.     Plaintiff and the Adverse Action Class are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

### PRAYER FOR RELIEF

48.     *WHEREFORE*, Plaintiff, on behalf of herself and the Putative Classes, prays for relief as follows:

A.     Determining that this action may proceed as a class action;

B.     Designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the Putative Classes;

C.     Issuing proper notice to the Putative Classes at Defendant's expense;

10

D.      Declaring that Defendant committed violations of the FCRA;

E.      Declaring that Defendant acted willfully in deliberate or reckless disregard of Plaintiff's rights and its obligations under the FCRA;

F.      Awarding statutory damages as provided by the FCRA, including punitive damages;

G.      Awarding reasonable attorneys' fees and costs as provided by the FCRA; and

H.      Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

### JURY TRIAL DEMAND

Plaintiff and the Putative Class demand trial by jury as to all issues so triable.

Dated this 25ᵗʰ day of August, 2016.

Respectfully submitted,

**DONNA V. SMITH**
Florida Bar No. 661201
**BRANDON J. HILL**
Florida Bar No. 0037061
**WENZEL FENTON CABASSA, P.A.**
1110 N. Florida Avenue, Suite 300
Tampa, Florida 33602
Main No.: 813-224-0431
Facsimile No.: 813-229-8712
E-mail: dsmith@wfclaw.com
E-mail: bhill@wfclaw.com
E-mail: tstrawter@wfclaw.com
E-mail: jriley@wfclaw.com
**Attorneys for Plaintiff**

11